NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| A-J-R,<br><br>                Petitioner<br><br>   v.<br><br>ERIC ROKOSKY, *et al.*,<br><br>                Respondents | Civil No. 25-17279 (RMB)<br><br>OPINION |

**BUMB, CHIEF UNITED STATES DISTRICT JUDGE**

This matter comes before the Court upon Petitioner A-J-R's petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" Dkt. No. 1), Respondents' answer to the petition ("Answer" Dkt. No. 3), and Petitioner's reply brief ("Reply" Dkt. No. 5.) For the reasons discussed below, the Court grants the Petition.

**I.   BACKGROUND**

Petitioner is an asylum seeker from Iran who is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), and is currently detained at the Elizabeth Contract Detention Facility in Elizabeth, New Jersey pending removal proceedings. (Petition ¶¶ 1, 7.) On November 5, 2023, Petitioner arrived at J.F.K. International Airport in New York and declared his intention to apply for asylum. (Petition ¶ 24; Ex. A, Dkt. No. 1-3.)

1

Customs and Border Patrol ("CBP") detained Petitioner and placed him in expedited removal proceedings. (Petition ¶ 25; Ex. B, Dkt. No. 1-4.) Upon his credible fear interview, on November 13, 2023, the asylum officer found Petitioner's fear credible and transferred his case to immigration court for further proceedings to determine if he qualified for asylum. (Petition ¶ 25; Ex. C, Dkt. No. 1-5.)

On January 25, 2024, Petitioner filed his initial Form I-589 requesting asylum, withholding of removal, and relief under the Convention Against Torture. (Petition ¶ 26.) On February 20, 2024, Petitioner was released from immigration custody on parole under 8 U.S.C. § 1182(d)(5). (Petition ¶ 27; Ex. D, Dkt. No. 1-6.) ICE found Petitioner was not a flight risk nor a danger to the community and did not enroll him in ISAP[1] or a monitoring program. (*Id.*) Petitioner appeared for all subsequent immigration court hearings, complied with his parole requirements, and was not arrested or cited for any crime or violation. (Petition ¶ 27.)

Petitioner was re-detained by ICE on June 27, 2025. (Petition ¶ 28; Ex. A.) He was not provided written notice or any reason for his arrest. (*Id.*) At the request of Petitioner's counsel, the Elizabeth Immigration Court placed Petitioner on its calendar for a removal hearing on July 29, 2025, which the Court adjourned *sua sponte* to August 6, 2025. (*Id.* ¶ 28.) Petitioner continued pursuing asylum, but on October 7, 2025, an Immigration Judge denied his application. (*Id.* ¶ 29; Ex. F, Dkt. No. 1-8.) On

---

[1] ICE's Alternatives to Detention Program ("ATD") consists of the Intensive Supervision Appearance Program "ISAP." Available at https://www.ice.gov/features/atd.

November 4, 2025, Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). (Petition ¶ 29; Ex. G, Dkt. No. 1-9.)

On November 3, 2025, Petitioner requested parole under 8 C.F.R. § 212.5(b) as implemented by ICE Directive 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture, and provided additional evidence favoring his release. (Petition ¶ 30; Ex. A, E; Answer; Ex. E, Dkt. No. 3-5.) None of the criteria on which parole was originally granted has changed. (Petition ¶ 30; Ex. A.)

Petitioner raises the following claims for relief in his Petition. In his first claim for relief, he asserts Respondents violated the Immigration and Nationality Act ("INA"), because 8 U.S.C. § 1182(d)(5) permits the "return[] to custody" of parolees only after the Secretary of Homeland Security determines, on a case by case basis, that the purpose of the parole has been served. (Petition ¶ 58) (citing *Y-Z-L-H- v. Bostock*, 792 F.Supp.3d 1123, 1144 (D. Or. 2025). Petitioner's purpose for parole, which had not been completed, was to apply for asylum and related humanitarian relief. (*Id.* ¶ 59.) Neither the Secretary nor her designee made an individualized determination that his purpose of parole had been served. (*Id.*)

For his second claim for relief, Petitioner asserts "Newark ICE has failed to follow ICE's national policy with respect to Petitioner's request for release on parole under 8 U.S.C. § 1182(d)(5)(A), in violation of *Accardi*.²" (*Id.* ¶ 62.) The Credible Fear

---

² *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954) (addressing "[t]he crucial question [of] whether the alleged conduct of the Attorney General" by dictating the result of the Board of Immigration Appeals discretionary determination, deprived petitioner of any of the rights guaranteed him by the statute or by the

Policy, Paragraph 8.3, ICE Directive No. 11002.1, Parole of Arriving Aliens Found to Have a Credible Fear of Persecution or Torture (Dec. 8, 2009), was created to implement 8 U.S.C. § 1182(d)(5)(A) as applied to non-citizens with a positive credible fear finding and does not require special factors to warrant release.  (*Id.*)  Under the Credible Fear Policy, an arriving alien with a positive credible fear finding should be released from detention on parole if he establishes his identity, poses neither a flight risk nor a danger to the community, and no additional factors weigh against release of the alien.  (*Id.*)  Petitioner was released pursuant to the Credible Fear Policy, but he was later re-arrested despite no change in circumstances.  (Petition ¶ 63, Exs. A, D, E.)  Petitioner contends his re-detention by ICE violates the Credible Fear Policy, his right to due process, and the *Accardi* doctrine.  (Petition ¶ 64.)

   Petitioner's third claim for relief is that his re-detention without adequate procedures violates due process.  (Petition ¶¶ 67-71.)  Petitioner was not provided a meaningful opportunity to be heard and to respond to the reasons for his re-detention. (Petition ¶ 69.)  Petitioner's fourth claim for relief is that his detention without a bond hearing is unreasonably prolonged, in violation of his Fifth Amendment right to procedural due process.  (Petition ¶¶ 73-81) (citing *German-Santos v. Warden, Pike County Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2024)).

   Respondents filed an answer in opposition to habeas relief.  They contend Petitioner is in mandatory detention under 8 U.S.C. § 1225(b)(1) because he arrived in

regulations issued pursuant thereto[.]"

the United States by airplane and was interviewed by a CBP officer and requested asylum. (Answer at 15.) Therefore, Petitioner "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *see also* 8 C.F.R. § 235.3(b)(4)(ii) ("Pending the credible fear determination by an asylum officer and any review of that determination by an immigration judge, the alien shall be detained.") (Answer at 11.) Respondents argue that although an asylum officer found Petitioner had a credible fear of persecution or torture if he returned to Iran, he remains subject to mandatory detention under § 1225(b)(1)(B)(ii) because "the alien shall be detained for further consideration of the application for asylum." (*Id.*)

Respondents further submit Petitioner remains an "applicant for admission" under Section 1225(b), despite the fact that he was paroled and later re-detained. (*Id.*) Petitioner's parole expired on February 19, 2025, when he failed to take steps to renew parole. (*Id.* at 8; Ex. C, Dkt. No. 3-3 at 3.) Thus, he returned to the status of an applicant for admission upon entry into the United States. (*Id.*) Further, the Court lacks jurisdiction to consider claims attacking discretionary parole determinations involving detention under § 1225(b)(1), and § 1225(b)(1) does not permit an Immigration Judge to conduct a bond hearing in lieu of parole. (*Id.* at 12.)

Respondents further oppose relief, asserting that: (1) Petitioner lacks standing to bring a claim under the Administrative Procedures Act; (2) parole decisions are committed to the sole discretion of the Department of Homeland Security ("DHS"); and (3) Petitioner's parole revocation is consistent with DHS policies. (*Id.* at 17-20.)

Finally, Respondents maintain that Petitioner's detention does not violate due process. (*Id.* at 16-20.)

In his reply brief, Petitioner does not dispute that he is subject to detention without a bond hearing under § 1225(b)(1), but argues that his detention is unlawful under 8 U.S.C. § 1182(d)(5)(A), and that his prolonged detention without a bond hearing violates the Due Process Clause. (Reply Brief at 1-2.) Petitioner asserts that § 1182(d)(5) only contemplates re-detention after a finding has been made that the purpose of his parole has been served, and no such finding has been made. (*Id.* at 2-3.) Furthermore, Petitioner contends that his re-detention, in lieu of extending his parole, violates the *Accardi* doctrine, which prevents an agency from disregarding its own regulations, and by extension, its own internal policies. (*Id.* at 3.) When Petitioner was granted parole in February 2024, he was never notified of the need to report to ICE or seek an extension of parole. (*Id.* at 6-7.) He was re-detained without the mandatory Parole Advisal and Scheduling Notification under Directive 11002.1, which gives notice before a parole decision is made. (*Id.* at 7.)

For the reasons discussed below, the Court finds Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing. Based on this finding, the Court need not address Petitioner's additional arguments.

## II.   DISCUSSION

Pursuant to 28 U.S.C. § 2241(c)(3), the Court has jurisdiction to determine if Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." For the reasons discussed below, the Court finds Petitioner is in custody in

6

violation of 8 U.S.C. § 1226(a) because he was not afforded a bond hearing before an immigration court.

A. **Statutory and Regulatory Framework**

8 U.S.C. § 1225(b)(1) applies to "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." Under this provision, noncitizens[3] who are arriving in the United States and are inadmissible must be screened and ordered removed without further hearing or review, unless they indicate an intention to apply for asylum. *Id.* § 1225(b)(1)(A)(i). Pursuant to § 1225(b)(1)(A)(iii), (I) and (II), the Attorney General may apply the expedited removal and screening provisions of § 1225(b)(1)(A)(i) and (ii), to "certain other aliens" including:

> an alien . . . who had not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

When a noncitizen indicates an intention to seek asylum, the immigration officer conducts an interview of the alien "at a port of entry or at such other place designated by the Attorney General." *Id.* § 1225(b)(1)(B)(i). If the asylum officer finds the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

Parole authority over noncitizens seeking admission into the United States is governed by 8 U.S.C. § 1182(d)(5)(A), which provides:

---

[3] The Court uses the terms "alien" and "noncitizen" interchangeably.

> The Secretary of Homeland Security may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

The implementing regulation for parole authority under § 1182(d)(5)(A) is 8 C.F.R. § 212.5. Among the groups of aliens who may be paroled are those with serious medical conditions, minors, noncitizens who will be witnesses in government proceedings and "aliens whose continued detention is not in the public interest as determined by those officials identified in paragraph (a) of this section." *Id.* § 212.5(b). "Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized." *Id.* § 212.5(e)(1). Otherwise, parole may be terminated on written notice "upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* § 212.5(e)(2(i). A charging document served on the alien "will constitute written notice of termination of parole, unless otherwise specified."

Noncitizens who are present in the United States without admission may be

arrested and detained on a warrant issued by the Attorney General pending a decision on whether the alien is to be removed from the United States.  8 U.S.C. § 1226(a).  Pending a removal decision, the Attorney General may detain the arrested alien or release the alien on bond, with conditions prescribed by the Attorney General.  *Id.* § 1226(a)(1), (2).

    B.    Analysis

In his third claim for relief, Petitioner alleges his re-detention without adequate procedures violated the parole statute, ICE policy and due process.  Petitioner was paroled into the United States in February 2024, pursuant to the Secretary of the Department of Homeland Security's exercise of discretion under 8 U.S.C. § 1182(d)(5)(A).  (Petition, Ex. D.)  Here, as in similar cases, "because § 1225(b)(1)(A)(iii)(II) applies only to individuals "who have not been ... paroled," the plain language of the statute clearly and unambiguously shows that § 1225(b)(1)(A)(iii) cannot serve as the basis for Petitioner's detention."  *Rivas Rodriguez v. Rokosky*, No. CV 25-17419 (CPO), 2025 WL 3485628, at *2 (D.N.J. Dec. 3, 2025).  Furthermore, once Petitioner was paroled into the United States, his parole automatically terminates without written notice only upon his departure from the United States or the expiration of time for which his parole was authorized.  8 C.F.R. § 212.5(e).

Respondents have failed to show Petitioner was notified that his parole would expire on February 19, 2025.  Petitioner received notice that his request for parole was granted, but the notice did not contain any reporting requirements or parole expiration date. (Petition, Ex. D.)  The only document Respondents have produced to establish

9

the date Petitioner's parole expired is a Form I-213, Record of Deportable Alien ("the I-213 Form"), dated June 27, 2025, created after his arrest as it describes the circumstances of his arrest. (Answer; Ex. C, Dkt. No. 3-3.) The I-213 Form states, "[o]n February 20, 2024, Newark ICE approved [Petitioner's] Credible Fear Parole Request until February 19, 2025." (*Id.*)

"The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it." *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976) (citation modified). At a minimum, due process likely requires advance notice of reporting requirements and a parole expiration date. The Court, however, can avoid this constitutional issue by determining that Petitioner was detained under 8 U.S.C. § 1226(a) rather than § 1225(b)(1). *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) ("We have read significant limitations into other immigration statutes in order to avoid their constitutional invalidation.") This determination of the basis for Petitioner's custody under § 1226(a) is consistent with Petitioner's Form I-200, Warrant for Arrest of Alien, which states:

> To: Any immigration officer authorized pursuant to sections 236 and 287of the Immigration and Nationality Act and part 287 of Title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations
>
> I have determined that there is probable cause to believe that [Petitioner] is removable from the United States. This determination is based upon . . .
>
> the failure to establish admissibility subsequent to deferred inspection;
>
> biometric confirmation of the subject's identity and a records

>check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the subject either lacks immigration status or nothwithstanding such status is removable under U.S. immigration law[.]

(Answer, Ex. D.)

Section 236 of the INA is codified at 8 U.S.C. § 1226, *see Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (citation modified) ("[t]he INA further provides that DHS may arrest and detain the alien pending a decision on whether the alien is to be removed from the United States[.]"))  Section 287 of the INA is codified at 8 U.S.C. § 1357(g) and governs when it is appropriate to arrest a noncitizen during the removal process. *See Arizona v. United States*, 567 U.S. 387, 408 (2012) (describing the statutory scheme to arrest an alien during the removal process and noting "[i]f no federal warrant has been issued, [federal] officers "who have received training in the enforcement of immigration law . . . have more limited authority[,] . . . [t]hey may arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' for example, but only where the alien 'is likely to escape before a warrant can be obtained.' § 1357(a)(2).")  Petitioner's circumstances fit within this statutory framework.

Respondents do not contest that Petitioner was not provided written notice of a reason for his re-detention.  (Response at 11-12.)  Instead, they contend his parole and later re-detention do not change the fact that he is an "applicant for admission" under Section 1225(b).  (*Id.*)  The text of § 1182(d)(5)(A) does not support Respondents' contention.  There is no language in the text about a parolee returning to the position of an "applicant for admission" at the threshold of entry, as § 1225(b) describes.  *Rivas*

11

*Rodriguez*, 2025 WL 3485628, at *2. *See also Jennings v. Rodriguez*, 583 U.S. 281, 286–87 (2018) ("To implement its immigration policy, the Government must be able to decide (1) who may enter the country [discussing § 1225] and (2) who may stay here after entering [discussing § 1226]).") Because § 1225(b)(1) is not a lawful basis for Petitioner's detention, and Petitioner was not detained under the parole revocation procedures described under 8 C.F.R. § 212.5(e), the Court concludes he can only be properly detained under 8 U.S.C. § 1226(a), as an inadmissible alien arrested pending a decision on whether he is to be removed from the United States. *See Jennings*, 583 U.S. at 288 (describing § 1226, "[e]ven once inside the United States, aliens do not have an absolute right to remain here. That includes aliens who were inadmissible at the time of entry . . . Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal.") Therefore, Petitioner is entitled to a bond hearing pursuant to § 1226(a) and 8 C.F.R. § 236.1(d)(1).

## III. CONCLUSION

For the reasons discussed above, the Court grants the Petition and orders Respondents to provide Petitioner with a bond hearing under 8 C.F.R. § 236.1(d)(1).

Dated: January 5, 2026

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**Chief United States District Judge**
