<u>**NOT FOR PUBLICATION**</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| A-J-R, <br><br>                Petitioner, <br><br>     v. <br><br> ERIC ROKOSKY, et al., <br><br>                Respondents. | Civ. No. 25-17279 (RMB) <br><br><br> **OPINION** |

**RENÉE MARIE BUMB,** Chief United States District Judge

This matter comes before the Court upon Petitioner A-J-R's Motion to Enforce Judgment ("Mar. 30, 2026 Motion to Enforce" Dkt. No. 31), in which he seeks to enforce the Court's March 3, 2026 Order granting him an individualized bond hearing by challenging the fundamental fairness of his bond hearing before the Immigration Judge. On April 2, 2026, Respondents filed a response ("Response" Dkt. No. 34) in opposition to Petitioner's March 30, 2026 Motion to Enforce. On April 3, 2026, Petitioner filed a reply brief ("Reply" Dkt. No. 35.) On April 10, 2026, Petitioner filed a letter ("Apr. 10, 2026 Letter" Dkt. No. 36) and supplemental evidence.

For the reasons explained below, the Court **DENIES** Petitioner's Motion.

1

## I.    BACKGROUND

Petitioner, an asylum seeker from Iran, has been detained at the Elizabeth Contract Detention Facility for approximately nine months, pending the conclusion of his removal proceedings. (Mar. 30, 2026 Motion to Enforce at 7.) On November 5, 2023, Petitioner arrived at J.F.K. International Airport in New York and declared his intention to apply for asylum. (Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition" ¶ 24; Ex. A "Decl. of A.J.R." Dkt. No. 1-3.) Upon arrival, Customs and Border Patrol ("CBP") detained Petitioner and placed him in expedited removal proceedings. (Petition ¶ 25; Ex. B, "Order of Expedited Removal" Dkt. No. 1-4.) On November 13, 2023, the asylum officer found Petitioner's fear credible and transferred his case to immigration court for further proceedings to determine if he qualified for asylum. (Petition ¶ 25; Ex. C "Notice to Appear" Dkt. No. 1-5.)

On January 25, 2024, Petitioner filed his initial Form I-589 requesting asylum, withholding of removal, and relief under the Convention Against Torture. (Petition ¶ 26.) On February 20, 2024, Petitioner was released from immigration custody on parole under 8 U.S.C. § 1182(d)(5). (Petition ¶ 27; Ex. D "Letter Granting Parole" Dkt. No. 1-6.) Immigration and Customs Enforcement ("ICE") found that Petitioner was neither a flight risk nor a danger to the community and did not enroll him in ICE's Alternative to Detention Program ("ISAP"), or any other monitoring program. (*Id.*) Petitioner appeared for all subsequent immigration court hearings, complied with his parole requirements, and was not arrested or cited for any crime or violation. (Petition ¶ 27.)

On June 27, 2025, Petitioner was arrested by ICE at his residence and re-detained. (Petition ¶ 28.) He was not provided written notice or any reason for his arrest. (*Id.*) At the request of Petitioner's counsel, the Elizabeth Immigration Court placed Petitioner on its calendar for a removal hearing on July 29, 2025, which the Court adjourned *sua sponte* to August 6, 2025. (*Id.*) Petitioner continued pursuing asylum, but on October 7, 2025, an Immigration Judge denied his application. (*Id.* ¶ 29; Ex. F "Order of Removal" Dkt. No. 1-8.) On November 3, 2025, Petitioner requested parole under 8 C.F.R. § 212.5(b) and provided additional evidence favoring his release. (Petition ¶ 30; Answer; Ex. E "Directive 11002.1" Dkt. No. 3-5.) On November 4, 2025, Petitioner timely appealed the decision to the Board of Immigration Appeals ("BIA"). (Petition ¶ 29; Ex. G "BIA Filing Receipt" Dkt. No. 1-9.)

Petitioner filed the instant Petition on November 6, 2025. On December 23, 2025, the Court ordered the immigration court to provide Petitioner with an individualized bond hearing under 8 U.S.C. § 1226(a). ("December 3, 2025 Order" Dkt. No. 13.) On December 30, 2025, Respondents filed a status report indicating that the immigration court held a bond hearing on the same day and denied bond. (Status Report, Dkt. No. 14.) On January 5, 2026, the Court issued an Opinion in support of the December 23, 2025 Order, and made the following findings: (1) ICE unlawfully arrested and re-detained Petitioner pursuant to 8 U.S.C. § 1225(b); (2) ICE did not follow parole revocation procedures set forth in 8 C.F.R. § 212.5(e), as such, Petitioner is subject to detention under 8 U.S.C. § 1226(a), which affords him a bond hearing

pursuant to § 1226(a) and 8 C.F.R. § 236.1(d)(1); (4) while due process likely required ICE to give Petitioner advance notice of parole expiration, the Court avoids the constitutional issue by determining that he was detained pursuant to 8 U.S.C. §1226(a) rather than § 1225(b).  ("Jan. 5, 2026 Opinion" Dkt. No. 16.)

On January 15, 2026, Petitioner filed a motion to enforce the Court's December 23, 2025 Order granting an individualized bond hearing ("Jan. 15, 2026 Motion to Enforce" Dkt. No. 18) and alternatively, a Motion to Revise the Decision pursuant to Rule 54(b) ("Motion to Revise" Dkt. No. 19.)  On March 3, 2026, the Court granted Petitioner's Motion to Revise, holding that Petitioner's detention of eight months was prolonged pursuant to *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020) and, accordingly, ordered a second bond hearing with the burden of proof on the Government.  ("March 3, 2026 Opinion" Dkt. No. 26 at 4; "March 3, 2026 Order" D.E. 27.)  The Court found as follows:

> The due process factors weigh in favor of Petitioner's release. He has been detained for eight months. His case was appealed to the BIA in October, and if the BIA upholds the finding of the Immigration Court, Petitioner will likely file a petition for review, and his detention will continue. Even if Petitioner's detention reverts to final removal order, his return to Iran is highly unlikely under the current geopolitical circumstances. There are no indications of bad-faith delay by either party in Petitioner's removal proceedings. The immigration courts are overburdened, and this causes significant delay. Finally, Petitioner describes punitive conditions of confinement because he has not been provided adequate care for his tooth abscess, which continues to cause him severe pain.
>
> The Government contends Petitioner was treated with antibiotics and referred for dental surgery. Dkt. No. 4, Ex.

4

> F "Medical Records" at 24, 45, 230-35. However, on January 16, 2026, Petitioner submitted a statement that he still has an abscess tooth that bleeds every day. Dkt. No. 19-4, Ex. R "Petitioner's Statement" at 6. Under these circumstances, due process requires that Petitioner receive a bond hearing upon which the Government bears the burden, by clear and convincing evidence based on individualized circumstances, to show that Petitioner presents a flight risk or a danger to the community if released. *See German Santos*, 965 F.3d at 213 ("once detention under § 1226(c) has become unreasonable, the Government must put forth clear and convincing evidence that continued detention is necessary.")

(March 3, 2026 Opinion at 5-6.) On March 5, 2026, the immigration court held a bond hearing in which the immigration judge denied bond. (Mar. 30, 2026 Motion to Enforce, Ex. 1 "March 5, 2026 Bond Hrg. Tr." Dkt. No. 31-4.)

## A.    March 5, 2026 Bond Hearing

On March 5, 2026, Petitioner appeared before Immigration Judge Leila Mullican ("IJ Mullican") at the Elizabeth Immigration Court for a bond hearing. (*Id.*) Petitioner submitted the following evidence in support of his request for bond:

- Letters of Support from Petitioner's Sponsor and Landlord, including proof of sponsor's ownership of Petitioner's residence

- Petitioner's documents establishing identity, including Iranian passport and driver's license, birth certificate, United States employment authorization document, and New Jersey driver's license

- Petitioner's ICE parole documents, including grant of parole on February 20, 2024, and denial of parole on November 28, 2025

5

- Petitioner's immigration court documents including order of expedited removal, notice to appear, order of removal, and BIA filing receipt
- Petitioner's proof of psychological and medical issues during detention

- Additional letters of support for Petitioner

- Petitioner's Iranian University Diploma

(March 30, 2026 Motion to Enforce, Exhibits 5, 6 "Bond Hrg. Submissions" Dkt. Nos. 31-5, 31-6.)

Respondents submitted the following evidence:

- 2023 and 2025 Form I-213

- Petitioner's record of sworn statement at J.F.K. International Airport

- Credible Fear Interview Notes

- 2024 and 2025 Form I-589

- October 7, 2025 Immigration Court Removal Order

- November 4, 2025 Notice of Appeal

- Copy of Petitioner's Iranian Passport

(*Id.*)

During the hearing, IJ Mullican heard argument from Petitioner's counsel and the Government, heard witness testimony from Petitioner's Sponsor/Landlord, and found as follows with respect to flight risk:

> The Court finds that the department has proved by clear and convincing evidence that the Respondent is a flight risk and a danger and the Court denies bond for those reasons. The

> Court finds that the Respondent -- the government showed by clear and convincing evidence that the Respondent did not update his address appropriately with immigration officials, that he did not handle his parole. He did not reappear for his parole. He also has a removal order against him and he's claiming that he is afraid to return to his country and so that makes him an incredible flight risk. Even though that claim is on appeal, the Court finds that the nature of his claim of fear of return to his country along with the immigration judge's finding of a lack of credibility and a denial of his relief makes him an incredible flight risk.

(March 5, 2026 Bond Hrg. Tr. at 39-40.)

With respect to danger, IJ Mullican found as follows:

> In addition, the Court finds that the department has shown [Petitioner] is a danger. He entered the United States on fraudulent passports according to even his own testimony through smugglers and has ties with family member ties to known and designated terrorist organizations.

(*Id.* at 40.)  Petitioner's instant Motion follows.

## II.    DISCUSSION

District Courts have continuing jurisdiction to address alleged noncompliance with conditional writs of habeas corpus.  *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citation modified); *see also Quinteros v. Warden Pike C'ty Corr. Facility*, 784 F. App'x 75, 77 (3d Cir. 2019) (noting that courts "retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis").  After review of the parties' submissions, the Court concludes that Petitioner has not shown that his March 5, 2026 bond hearing was fundamentally unfair.  Pursuant to 8 U.S.C. § 1226(e):

7

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

In a non-precedential decision, "the Third Circuit discussed the scope of a federal habeas court's jurisdiction to review the outcome of an immigration bond hearing for compliance with an order conditionally granting federal habeas relief." *Morgan v. Oddo*, No. 3:24-CV-221, 2025 WL 2653707, at *3 (W.D. Pa. Sept. 16, 2025) (citing *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *1 (3d Cir. Feb. 25, 2022)). The Third Circuit explained that "[a] motion to enforce a judgment is not the proper avenue to relitigate the merits of a bond order." *Ghanem*, 2022 WL 574624, at *2. Section 1226(e) precludes habeas courts from reviewing discretionary determinations underlying an IJ's bond decision, but allows habeas courts to review whether the bond hearing was fundamentally unfair. *Id.* "In a fundamentally fair bond hearing, due process has three essential elements . . . (1) factfinding based on a record produced before the decisionmaker and disclosed to [the petitioner]; (2) [the opportunity] to make arguments on his or her own behalf; and (3) . . . the right to an individualized determination of his [or her] interests." *Id.* Allegations that the decisionmaker "did not conduct any individualized analysis of [the] evidence . . . amounts to an allegation of improper evidence weighing" which is precluded by § 1226(e). *Id.*

In support of his due process challenge, Petitioner notes the following:

8

- IJ Mullican's finding of flight risk based on Petitioner's failure to update his address was based on Respondents' improper revocation of parole

- IJ Mullican's flight risk determination based on a collateral asylum proceeding was unsupported in the record

- IJ Mullican failed to conduct an individualized assessment of dangerousness based on her reliance of Petitioner's alleged use of false passports for entry into the United States

- IJ Mullican failed to conduct an individualized assessment of dangerousness based on Petitioner's estranged relatives

(Reply at 1-4.)

A bond hearing is individualized "if it is not so arbitrary that it would offend fundamental tenets of due process" and "if there is a discernible rational basis for the underlying administrative decision, and the immigration judge applies the correct legal standards, that suffices." *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D. Pa. Feb. 12, 2026) (quotation marks and citation omitted).

Petitioner argues that while IJ Mullican expressly acknowledged that the Government bore the burden during the bond hearing pursuant to this Court's March 3, 2026 Order, she failed to truly apply that standard. ("Petr's Mem." at 11-20, Dkt. No. 31-1.) Under the clear and convincing evidence standard, factual findings are "highly probable," in contrast with the lower preponderance of the evidence standard. *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citing C. McCormick, Law of Evidence § 320, p. 679 (1954)).

9

While Petitioner raises good points that the BIA may consider on appeal, this Court lacks authority to weigh the evidence and determine whether the IJ properly applied her discretion in determining there was clear and convincing evidence of flight risk and danger. It is well settled that the IJ may give greater weight to certain factors over others in coming to a reasonable decision. *See Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 804–05 (BIA 2020) (internal citations omitted). IJ Mullican reviewed the submissions during the bond hearing and considered them, as well as argument from both Petitioner's counsel and Respondents' Counsel, and testimony from Petitioner's Sponsor/Landlord, in making her decision. (Mar. 5, 2026 Bond Hrg. Tr.) The Court finds that IJ Mullican made an individualized determination of Petitioner's flight risk and danger, and it is not this Court's role to agree or disagree with the finding. Petitioner does not identify any due process violation. (March 30, 2026 Bond Hrg. Tr. at 39-40.) Any further challenge to this decision must be presented to the BIA.

## III.  CONCLUSION

For the reasons stated above, Petitioner's Motion to Enforce Judgment (Dkt. No. 31) is denied. Any further challenge to this decision must be presented to the BIA.

**Dated April 28th 2026**

s/ Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge

10